In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4057

Felicia Anderson, as Special Administrator
of the Estate of Wayne Anderson, Deceased,

Plaintiff-Appellant,

v.

Kevin Simon,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 CV 1587--James B. Moran, Judge.

Argued May 17, 2000--Decided June 21, 2000

Before Bauer, Coffey and Kanne, Circuit Judges.

Kanne, Circuit Judge.   Wayne Anderson was a
heroin addict with prior convictions for
residential burglary. In March 1997, he burgled
a neighbor's apartment and sold the stolen goods
to a pawn shop to get money and buy heroin. The
neighbor reported the burglary, and the police
quickly located the stolen goods. On March 12,
1997, the police confronted Wayne Anderson with
the stolen goods, and he immediately confessed to
the burglary.

Anderson was arrested at 3:40 p.m. and taken to
the 25th District Police Station in Chicago,
where he was held in police lockup pending
charging. Later that afternoon, his neighbor
filed a criminal complaint, and the police
decided to hold Anderson overnight. During the
night, Anderson began to experience heroin
withdrawal symptoms. He became depressed and told
the officers on duty that he wanted to kill
himself. Shortly after midnight, the police watch
commander assigned Detective Holec the case.
Holec was responsible for working with Assistant
State's Attorney Kevin Simon from the Felony
Review Unit of the Cook County State's Attorney's
office to determine whether Anderson would be
charged with felony burglary.

Simon refused to approve felony charges against
Anderson until a lineup could be held. Holec
reported Simon's decision to Assistant Deputy
Superintendent Anthony Ivanjack, his superior,

and Ivanjack spoke to Simon about the matter at 3:00 a.m. Simon again refused to authorize felony charges against Anderson, and Ivanjack declined to transfer Anderson to a hospital prior to charging. Simon allegedly suggested to Ivanjack that the police set up a lineup and ordered Anderson detained until this lineup was held. For this reason, Anderson was held overnight and for much of the next day. The lineup was held at about 5:00 p.m. the next afternoon, and Anderson returned from the lineup at about 7:00 p.m. At 7:20 p.m., Anderson was found dead in his cell, hanging from a noose.

Felicia Anderson, Wayne Anderson's widow, filed suit against Ivanjack, the City of Chicago and the officers who monitored Wayne Anderson, claiming that the failure to transfer Wayne Anderson constituted a violation of his Fourth Amendment rights, pursuant to 42 U.S.C. sec. 1983. The City, the officers and Ivanjack eventually settled with Felicia Anderson. Unsatisfied with this resolution, in March 1999, Felicia Anderson filed a sec. 1983 action against Simon in his personal capacity. Felicia Anderson stated in her complaint:

5.  After [Wayne Anderson] had confessed and after a criminal complaint had been signed, defendant Simon, acting under color of his authority as an Assistant State's Attorney, caused [Wayne Anderson] to be held in custody at a police station so that additional evidence could be gathered against him.

* * *

7.  As the direct and proximate result of the above referred actions of [Simon], [Wayne Anderson] was deprived of rights secured by the Fourth and Fourteenth Amendment to the Constitution of the United States.

On July 14, 1999, Simon moved to dismiss the complaint, claiming that it was too vague, failed to state a claim and failed to allege the requisite causal relationship between Simon's role and Anderson's death. Simon also claimed that he was entitled to absolute prosecutorial immunity. In her answer to Simon's motion to dismiss, Felicia Anderson expanded the factual basis for her complaint, contending that Simon was empowered to order the police to hold Wayne Anderson until further evidence could be gathered and his decision to hold Wayne Anderson violated Wayne Anderson's Fourth Amendment rights, which led to the wrongful failure to prevent his suicide in violation of his Fourteenth Amendment right to due process.

However, on November 1, 1999, the district court granted Simon's motion to dismiss for three reasons. First, the court held that Simon was entitled to absolute immunity as a prosecutor. Second, the court held that the failure of jailors to prevent a known suicide risk was a superseding cause that absolved Simon. Finally, because Anderson had not been held for forty-eight hours and Felicia Anderson had not pleaded sufficient complicating circumstances, the court held that she had failed to plead a violation of Wayne Anderson's constitutional rights, as required under sec. 1983.

On appeal, Felicia Anderson argues that the district court erred in dismissing her sec. 1983 complaint for three reasons: (1) Simon was not entitled to prosecutorial immunity because his refusal to charge was not a prosecutorial decision; (2) the court misapplied the forty-eight-hour rule because Wayne Anderson was detained without being charged only to allow police to gather additional evidence against him; and (3) the possibility of a superseding cause for Wayne Anderson's suicide, in this case jailor negligence, did not deprive Felicia Anderson of the right to seek damages for Simon's role in the detention. Because we find that Simon's decision not to approve charges against Wayne Anderson was entitled to absolute prosecutorial immunity, we do not decide whether the forty-eight-hour rule was applied correctly or whether jailor negligence constituted a superseding cause to his death. We review de novo the district court's grant of a 12(b)(6) motion, accepting the well-pleaded allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. See Marshall-Mosby v. Corporate Receivables, Inc., 205 F.3d 323, 326 (7th Cir. 2000).

To survive a motion to dismiss a sec. 1983 action, a plaintiff must allege facts which show that the defendant, acting under color of state law, intentionally and unlawfully deprived the plaintiff of a constitutional right. See Patrick v. Jasper County, 901 F.2d 561, 565 (7th Cir. 1990). Federal notice pleading requires only that the plaintiff "set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." Scott v. City of Chicago, 195 F.3d 950, 951 (7th Cir. 1999). In ruling on a 12(b)(6) motion, a district court may take judicial notice of matters of public record without converting the 12(b)(6) motion into a motion for summary judgment. See Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994).

To free the judicial process from the

harassment and intimidation associated with frivolous litigation, the Supreme Court has held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages." Imbler v. Pachtman, 424 U.S. 409, 431 (1976). However, the degree of immunity prosecutors are afforded depends on their activity in a particular case. If a prosecutor's function is judicial or quasi-judicial, he is entitled to absolute immunity from suit, but if the function was administrative or investigatory, he is only entitled to qualified immunity. See, e.g., Spiegel v. Rabinovitz, 121 F.3d 251, 257-58 (7th Cir. 1997). In Spiegel, we held that an assistant state's attorney's determination whether charges should be brought is a quasi-judicial decision, entitled to absolute immunity. Id. In that case, the assistant state's attorney was faced with cross-complaints of battery from opposing parties. He filed a report to his superiors which advocated charging one party with battery but not the other. The charged party brought a sec. 1983 malicious prosecution suit, claiming that since the assistant state's attorney acted in an investigatory role, he should not be entitled to absolute immunity for advocating that the party be charged. We disagreed, holding that "absolute immunity must extend to the [prosecutor's] professional evaluation of evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." Id. at 257 (internal quotation and citation omitted).

In Spiegel, we distinguished Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993), in which the Supreme Court found a prosecutor who traveled to the crime scene to determine if evidence taken from the crime scene was sufficiently reliable to constitute probable cause was not acting as an advocate, but as an investigator. Spiegel, 121 F.3d at 257. In Buckley, the Supreme Court made clear that the determinative question in considering whether a prosecutor-defendant is entitled to absolute immunity is whether the prosecutor was acting as an advocate in performing the tasks for which he is sued. Buckley, 509 U.S. at 274. The Supreme Court noted that the role of advocate normally begins on arrest because "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." Id. Nonetheless, probable cause to arrest does not immunize a prosecutor for all activities performed following arrest, if these activities are investigative in nature. See id. at 274 n.5.

Felicia Anderson's complaint against Simon

states that Simon "caused [Wayne Anderson] to be held in custody at a police station so that additional evidence could be gathered against him." In her response to Simon's motion to dismiss, Felicia Anderson clarified that Simon caused her husband to be held by (1) his refusal to charge Wayne Anderson, despite overwhelming evidence that he committed the crime for which he was arrested, and (2) his order that the police hold him without being charged until a lineup could be held.

Simon's refusal to charge Wayne Anderson given the evidence at his disposal is a prosecutorial decision. In Spiegel, we determined that a state's attorney's decision regarding which of two cross-complaints should be prosecuted merited absolute immunity, Spiegel, 121 F.3d at 257, and a prosecutor's decision not to file charges immediately is entitled to the same degree of protection. Like the assistant state's attorney in Spiegel, Simon reviewed and weighed the evidence, and he determined that additional evidence was necessary to support a felony burglary charge. Such calculations are a necessary part of a prosecutor's role of advocate in preparing for its presentation at trial or before a grand jury, and Felicia Anderson proposes no reason that the decision to forestall charging merits less protection than the decision to charge. According to Felicia Anderson's allegations, Simon anticipated bringing charges against Wayne Anderson and was already acting in his role as an advocate when he made the decision to await the results of a lineup before proceeding with felony charging. Under these circumstances, we do not believe that Simon played an investigatory role in Anderson's detention, and on this basis, we believe that his decision not to charge is entitled to absolute immunity.

Felicia Anderson also contends that Simon caused Wayne Anderson to be held by ordering the police to keep him in custody until a lineup could be held. She claims that Simon's order that the police hold a lineup was an investigatory action, likening it to the legal advice given by prosecutors in Burns v. Reed, 500 U.S. 478, 493 (1991), not a prosecutorial action, so it is not entitled to the same degree of protection as his refusal to charge Wayne Anderson. Because we rule on a grant of a motion to dismiss, we accept as fact that Simon ordered police to hold Wayne Anderson overnight and suggested that police should hold a lineup to generate additional evidence. To survive a motion to dismiss, however, Felicia Anderson must plead facts that if true, would constitute a sec. 1983 violation. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Even under this generous interpretation of Felicia Anderson's complaint, she fails to meet this threshold.

Although Felicia Anderson alleges that Simon ordered the police to hold Wayne Anderson until they conducted a lineup and suggested that the police hold a lineup to create more evidence against Wayne Anderson, Felicia Anderson does not allege that the police were under any duty to follow a state's attorney's orders or suggestions. The police, not the state's attorney's office, decide whether to detain an individual following arrest but prior to formal charging, see, e.g., Kyle v. Patterson, 957 F.Supp. 1031, 1034 (N.D. Ill. 1997), and the police are not obligated to adhere to the suggestions of the state's attorney's office, a separate and distinct organization with no command authority over the Chicago Police Department. For this reason, Felicia Anderson's allegations, by themselves, that Simon ordered the police to hold him and ordered the police to hold a lineup fail to state a sec. 1983 violation. Felicia Anderson additionally must allege reasons that Simon's statements caused police to hold Wayne Anderson in an unreasonable fashion. Felicia Anderson fails to meet this hurdle, as she nowhere sets forth in her complaint how Simon's orders forced police to detain Anderson.

If the police chose to hold Wayne Anderson until the state's attorney was satisfied that charges should be filed, that was a matter left to the discretion of the police. Inaction by the police does not constitute an action by Simon that caused Wayne Anderson to be held. Because Felicia Anderson has failed to state a claim on which relief can be granted, we find no error in the district court's grant of Simon's motion to dismiss.

Because Simon's decision not to approve charges against Wayne Anderson is a prosecutorial decision rather than an investigative one, we find that he was entitled to absolute immunity from prosecution under sec. 1983 for this decision. For these reasons, we Affirm the district court's grant of Simon's motion to dismiss.